case this morning, Laura Divane v. Northwestern University. Mr. Sawyers. Thank you. May it please the court. Sean Sawyers on behalf of the plaintiffs. Plaintiff's amended complaint presents a compelling case of a fiduciary failure to monitor and eliminate imprudent investments and unreasonable fees. The court should now hold that plaintiffs have stated three plausible claims for relief based on Northwestern causing the plans to incur unreasonable recordkeeping fees and maintaining an excessively duplicative investment lineup. Mr. Sawyers, Northwestern proposes this Dudenhofer standard. What pleading standard do you propose that we should adopt? Well, there needs to be enough factual content to allow a reasonable inference that the fiduciary failed to exercise the care, skill, prudence, and diligence that a prudent fiduciary would have used under the circumstances. So, and the way that plays out in this case is the complaint contains factual allegations of things like obtaining bids, consolidating record keepers, analyzing fees on a per participant basis, switching to lower cost share classes to avoid wasting the beneficiary's money. So the fact that Northwestern did none of those things is sufficient to raise an inference that the process was flawed in some way. And that is how the Third Circuit in Sueda evaluated a very similar complaint raising similar claims. So we should utilize the factual allegations in the complaint to create that pleading standard a la Sueda? Is that your position? Yes. And Mr. Sawyers, let me ask you, tell you what troubles me about the case. I'm newer to it than my colleagues are. But if you win, who pays? Well, possibly an insurer would pay. Possibly the university. The defense tells us that insurance for such claims is not available. Well, I don't think there's any evidence of that. Maybe not. But let's suppose there's no insurance. Who pays? Are the fiduciaries personally liable? They are. I believe the university would indemnify any of the individual defendants in this case. Maybe. But here's what concerns me. I mean, as I understand it, the university and the plan took all these corrective actions that you're saying were needed. They actually took them before you filed suit, right? Well, some of them were implemented between the filing of the suit and the amended complaint. And some of them came first before the complaint, right? Right. So what this seems to suggest is a scenario in which any time a fiduciary moves to improve options, cut costs, etc., somebody can sue on the theory that they should have done so six months earlier. No, I don't think that. It's a kind of Monday morning quarterbacking thing. What would defeat such a claim? Well, the fact that they made changes isn't critical to the claim. In the Penn case, for instance, there weren't any changes made and yet it stated a plausible claim. Similar facts. It's maintaining these imprudent structures. This took six years before these things were... Well, that's the statute of limitations, right? Right. So why is the scenario that I've posed not realistic? The Monday morning quarterbacking? When you get an announcement of bad corporate news that causes a stock drop, you get a suit that says, well, they should have announced it three months earlier. And it was fraudulent not to do so. Here you don't even have to prove fraud. You just have to prove breach of fiduciary duty, right? Right. Well, I think there are rules against the admission of subsequent remedial measures that... There are, but you're not answering my question about this kind of just Monday morning quarterbacking. You should have done this sooner. And imposing personal liability on fiduciaries who have day jobs, right? Right. Why would anybody agree to be a fiduciary if that's the legal system that applies to their decisions? Well, there's no evidence that any employer has dropped these sorts of plans, that they've proliferated... Not yet, but we're relatively early in this kind of post-Hughes world. These similar excessive fee claims in the 401k space began 16 years ago. Okay. And there's still no evidence that any employer has dropped these sorts of plans or that they... Let me put it this way. Would you agree to be a fiduciary? I would. Under these circumstances for a big employee's exercise... And you think that's what you're doing and then you make a correction and then somebody else comes in and says, another plaintiff's lawyer comes in and says you should have done that a year earlier, Mr. Sawyers. So we'll hold you liable for the extra $2 million in costs for that year. Yeah, I suppose if I waited five years to implement a change, yeah, that's the risk that one would take. If prudence dictates not wasting the employee's money. Okay. If I could ask you about... I'm not getting anywhere with this, so let me ask you about to address our Oshkosh case on the record keeping claim. Right. Why doesn't that foreclose this claim? Well, the problem with Oshkosh, Albert, as well as the previous opinion in Devane, neither of those cases mentioned George versus Kraft. And George versus Kraft says that there's a duty to ensure that the fees are reasonable. Are you saying that Oshkosh was wrong and we need to overrule it? Well, what I think I'm saying is Oshkosh couldn't implicitly overrule an existing precedent, which is George. So George assessed a similar claim of excessive record keeping fees, held that Oshkosh was a failure to solicit competitive bids when a prudent fiduciary would have solicited bids can be a breach of fiduciary duty, rejected the defendant's claim that it was reasonable to pay double the market rate to the record keeper because the services were superior and therefore reasonable. That's in note 11 at page 799 of George. It said that these are, whether the higher fees were justified by the services presented a question of fact, but there was nothing as a matter of law to say that it was necessarily reasonable to pay double the market rate when the same services allegedly were available for half the cost. Here the same services were available. So it sounds like you think we should say Oshkosh was incorrectly decided. Well, it certainly overlooked George. Could you answer my question? We have to deal with George. No, I'm sorry. We have to deal with Oshkosh. If we also have to deal with George, fine. How should we do it? I think pointing out the case that we cited in our 28J letter points out that a court, a later panel can't implicitly overrule an earlier panel. So pointing out that George remains a law of the circuit and that Albert did not address George I think is a way to handle it. Mr. Sawyers, what do you say we're to make of the last sentence of the Supreme Court opinion? At times the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise. What are we to do with that sentence coming after Dudenhoff or coming after the reference that we're to apply to him? Well, there's two things there. One is were there difficult tradeoffs? And as the Department of Labor pointed out in its Rule 54 statement on remand, there was no difficult tradeoff at issue here. The same services were available at a significant lower cost. And when the changes were implemented, there wasn't anything that was sacrificed. The changes were portrayed as purely beneficial. The defendants have focused on the desirability of the TIA traditional annuity, but the desire to keep that in the plan simply required using TIA's record keeper and the Kreft stock account. But it didn't prevent switching to lower cost shares of plan mutual funds. It didn't prevent obtaining bids or negotiating lower record keeping fees with TIA itself. And then the second point is did the fiduciaries in fact apply their experience and expertise? And the complaint here raises a reasonable inference that they failed to do that, admittedly allowing TIA and Fidelity simply to put their preferred investment lineups in the plan, allowing the participants essentially to self-manage the plan for many years. So is the direction here specific to this case in the case of Dudenhoff in that last sentence, or is that direction here supposed to inform our pleading standard on the duty of prudence? Well, I think it's a general standard that a court should consider in assessing the duty of prudence and whether it's been met. Do you think it's a pleading standard or a proof on the merit standard? Well, it's a proof on the merit standard, and that informs what has to be alleged to be true. Do you see, Mr. Sawyers, any value in providing stability to plan participants and beneficiaries, not necessarily forcing them out of investments they've been happy with for the sake of one or two basis points? Well, there could be. If there were some evidence that making changes to the plan would cause participants to stop participating in the plan in large numbers, that could weigh... Is that what it would take? I would think trustees of a university plan would say, look, we're trying to take care of the faculty, we're trying to take care of the staff, we don't want to have them have to shuffle their investments every year and rethink everything every year. Is there any value to that? Is that reasonable, for example, as part of the considerations that the last sentence in the Hughes opinion invites? Certainly, but the fiduciaries have to make a decision based on what's in the financial system. If it's greatly outweighed by fee savings and enhanced performance, I don't believe that would be a valid reason not to make changes. Well, they'd have to weigh and make judgments about that, right? Right. That last sentence in Hughes looks to me a lot like a kind of baking in a business judgment rule, that trustees have to make trade-offs and it's hard to know how to weigh those. Could I ask you one question about the procedures in the district court? Was there a deadline for amending pleadings and where did your second amended complaint, your proposed second amended complaint, fit in with that deadline? There was no deadline for amending pleadings. The only scheduling order entered set a deadline for completion of discovery, but there was no pleading deadline. Okay, thanks. Thank you. Thank you. Mr. Martin. So, may it please the Court, my name is Craig Martin. I represent Northwestern and the other four appellees in this case. I have been with the case for a long time. In terms of what I'd like to do, instead of following my wrote outline, is address the questions that you all were going through a moment ago, and what I'd like to do is start with the pleading standard, then move on to record keeping, and then move on to the more investment claims. So, let me begin with the pleading standard and give you our take with regard to the TBIL decision, I'm sorry, the Hughes decision. In terms of Hughes, it's a very targeted decision that we don't think changes the law that this panel previously relied upon in affirming the district court's decision, and we think that the Oshkosh decision by this court essentially confirms that. The key with regard to the pleading standard and the Supreme Court's decision, we believe, is to apply Iqbal and Twombly in light of Dudenhofer, recognizing that there's, of course, a duty to monitor. It's well established in fiduciary law, which is basically the principle of TBIL. In this context, pleading that an alternative action that the plaintiff alleges should have taken was actually available, we believe, is necessary. And if the alternative action was not available, then the alleged conduct may be perfectly consistent with lawful conduct, and you can't breach your fiduciary duty by not pursuing something that wasn't available. Here, the plaintiffs actually admit, for the first time, actually, in the reply brief in this court, after going all the way up to the Supreme Court, that they missed both plans. The first time that they've admitted that we had to have both TIA and another record keeper. The other thing that they admitted for the first time in the reply brief in this court is that there actually was a 2.5 percent penalty for withdrawing funds from the very popular TIA annuity fund, which would be very disruptive to participants' investments to move to two record keepers. So they don't make that allegation. While we're on that subject, Mr. Martin, I gather that there was a request made, and TIA cut its record keeping fees pretty dramatically. Yes. What happened, Your Honor, is this. And the allegations, the complaint established this, but we basically went through fiduciaries. And if you read, as you go through the briefs, most universities had a number of different investment options, lots of investment options, because historically they just grew those options. Accommodate the janitor, accommodate the professor. In terms of Northwestern, then goes through a period of time in which it's trying to figure out what to do with its investment plans. And in 2016, they make a number of changes. One of those changes is to remain with two record keepers, reduce the fees from the record keepers, both TIA and Fidelity, and put Fidelity in the lead position, essentially the participant facing record keeper. So those are the changes that they make in 2016. The other changes that they make in 2016 is they decide to adjust the lineup of funds in both of the plans. And I'll just tell you what those are. They keep the TIA annuity fund, which is this very popular investment. They move to a brokerage window, so you can access the market and all the investments the market has. And then they have, I think it's five index funds and about 16 actively managed funds in their new lineup in 2016. But returning to that record, to the pleading standard, Judge Brennan, that you were asking about. So in terms of the pleading standard, we think it's got to be very particular in terms of specifically identifying the options that are supposedly available and actually identifying them in a contextual way. But why isn't it more reasonable to read the heightened standard adopted in Dudenhofer as applicable in the ESOP context alone, based on the contextual specifics of that type of plan? The insider trading theory? I think the reason that Dudenhofer is cited is to explain with some particularity what the pleading standard should be trying to filter out. But it was a heightened pleading standard adopted based on that specific context. And here we have a more generic kind of a breach of fiduciary duty claim. Generic. In terms of— These are being made all over the country. I don't need to tell you. Well, they are cookie cutter. And that's one of the issues, right? So I think what the court is—look, I think the Supreme Court guidance was essentially you have to recognize that fiduciaries have to make tradeoffs. That there are always going to be tradeoffs. They're making reasonable judgments, and you have to do it in the context of time changing, sort of to the questions that Judge Hamilton was asking. And that's also a word to take, Mr. Martin, then, on that last sentence of the opinion? Yes. I believe that that is—I believe that that sentence is there to inform the court as to how to apply Twombly and Iqbal to the pleading standard that exists for these types of ERISA cases. Because going to the point, there are, in terms of the context of take a fund line up, take record keeping fees, there's all sorts of tradeoffs that fiduciaries make when they're deciding what to put into a plan. And you see this as it moves in time. And in fact, from pop culture and pop investment culture, you know that this moves in time. Where there can be reasonable judgments, but they just change over time. The tradeoffs change over time. The reasonable judgments change over time. So, for example, you know, if you go back to the 1980s, active management was all the rage. If you talk about it today, active management is, you know, criticized often. That doesn't mean that there's something wrong with active management being part of the lineup, or index funds being part of the lineup. And I think the standard that the Supreme Court is trying to get at by citing Dudenhofer and citing specifically the tradeoff language, the reasonable judgments of fiduciaries, and the fact that things change over time is just that. So I think in terms of trying to help the court with regard to what we think the pleading standard should be, it needs to be informed by the Dudenhofer language, but it also needs to be done in the context of the heightened pleading standards of Twombly and Iqbal. I would note that the suite of court in the Third Circuit, the majority opinion, does not follow Twombly and Iqbal. I would also note that Braden is actually a self-dealing case from the Eighth Circuit. What about Foreman in the Sixth Circuit, the investment options component of this, the share class? Are you talking about the Tri-Health case? Yes, Foreman versus Tri-Health. So that, sorry, I think about it as the Tri-Health case. So the difference between Foreman, so let's talk about the things that we like about Foreman. Foreman dismisses everything, right, and it follows Smith, and it also talks a little bit about Deere and Oshkosk. But Foreman is materially different than this case in this regard. At paragraph 266 of the complaint in this case, the first amended complaint, which is the complaint that is at issue, they allege defendants retained multiple investment options until October 2016, therefore, thereby depriving the plans of their ability to qualify for lower cost share classes of certain investments. So the theory that they pled in the first amended complaint is you had 242 investment options in one plan, 187 in another plan, and because of that, because you had so many options, you did lower, or institutional share classes were not available to you. That's what they plead in the complaint that is at issue. In Foreman, that is not the allegation. The allegation in Foreman is actually that those institutional class shares were available to plaintiffs. So here the allegation is they're not available. The allegation I understood to be that they could have been available. They could have been. I think their allegation is they were not. The Supreme Court has told us that this institutional versus retail shares claim is in the case, right? Exactly as pled in the first amended complaint, Your Honor. Well, it's there. To go back to the pleading standard and your discussion with Chief Judge it embraces some broader principles and some very specific rules for the ESOP cases. The broader principles are Twombly and Iqbal apply as they do across the board for better or worse, and they need to be applied in the specific context of whatever case is being alleged under ERISA. I don't know that there's any particular controversy about that point, but Dudenhofer in the ESOP cases includes this much more stringent standard, probably beyond a PSLRA standard, that plaintiffs must plausibly allege that a prudent fiduciary in the defendant's position could not have concluded that the alternative course would do more harm than good. That's an almost unprecedented pleading standard to deal with the dynamic of the, in essence, the insider trading theories that are at the heart of the ESOP cases. Does your defense in this case depend on applying that standard, that narrow Dudenhofer standard here? No, it does not. And in terms of the language that the Supreme Court used to cite Dudenhofer, it is the tradeoff language and reasonable judgments. And how do you deal with that at the pleadings? Well, I'll give you an example to tie it to this particular case. In terms of their allegation in the first amended complaint, it is that you had so many options in your plan that you were deprived of the ability to shift to institutional classes, shares. Whether that's true or not, there's a lot of issues with that itself. But in terms of that lineup of funds, right, in one of the plans there's 242, in another there's 187. And let's just assume, as we have to, right, that that's true. We had so many funds that we were deprived. I assume that that's because we didn't reach investment minimums or something. But whatever it is, that's what they say. Assume that that's true. Well, that in and of itself actually represents the type of tradeoff that a fiduciary is entitled to make a reasonable judgment on. So, for example, it may be the case that a fiduciary makes a reasonable judgment on having, you know, 17 real estate funds as opposed to only having one real estate fund. It may be that, and so forth. So in terms of when I say the pleading standard has to identify what a particular alternative is, well, tell me in the pleading what it is you want us to do to reconstruct the plan that will give you what you want. How do you allege what the alternative is? We were supposed to eliminate these 17 funds and consolidate them into one fund. We were supposed to eliminate the TIA annuity fund so that we could have bigger investments and other things. What specifically is it that we were supposed to do? Just because you have one lineup that may be reasonable doesn't mean that another lineup all of a sudden has to be reasonable. So all they do in the pleading with regard to this issue is they essentially say, hey, there's something called institutional class shares, and you, by the way, should have been using those instead of the lineup and panoply of funds that you had. That's not enough to satisfy Iqbal, and it's not enough to satisfy, I think, although I don't think it's necessary, even the loose language in the Supreme Court's opinion on Dudenhofer. So in this particular case, they just don't get there. And in fact, if you go back to the TriHealth case, in the TriHealth case, they actually have more specific pleading with regard to the availability of institutional class funds, and they specifically point out in TriHealth in that opinion that you could actually, that the liquidity in the system and getting in and out of the funds was easy. That's not necessarily the case with institutional funds, and they don't plead that here. You're talking about, frankly, a level of specificity in pleading that strikes me as extraordinary, even under Twombly and Iqbal. Can I ask you, in your red brief, you complained about the fact that the plaintiffs were referring to a lot of materials outside the pleadings. Yes. And they cited footnote one in the Jynoski against City of Chicago opinion. Yes. Which you dismiss as dictum. I think the case is just not instructive in this situation. Well, the point that the Jynoski footnote is making, which is sound and correct, is that the party opposing a motion to dismiss under 12b-6 is entitled to point to virtually anything outside the pleadings to illustrate, add, or even add credibility to their pleadings to say this is the kind of thing we think we could prove. The moving party doesn't have such liberties, but the party opposing it does. Two comments on that case. One is, I know as your Honor knows, that case involved Chicago Tribune reports with regard to the specific episode in that case. You know the case well. Writing of tickets. Favorite case in the case. Very memorable. I feel that way, too. It was. In terms of what they do, it's different than that case. What they do is they actually have a second amended complaint, which this court found there was a leave was not granted, this court affirmed. They actually take information from that second amended complaint and try to put it into this case. And that's our big complaint with regard to the principle that they're doing. And perhaps our language is a little loose by saying dicta, but a better way to say it is we don't think the case is helpful to them. One of the problems that I find complicating about this case is that the district court here said that that proposed amendment came too late and would be futile, right? Late, futile, both of those things. Late, prejudice, and futile. So, was there a deadline for amending the complaint that plaintiffs missed? There was. The scheduling order did not have a deadline for amending the complaint, so you're under Rule 15. Okay. So, that's a problem. And then it seems pretty clear that in light of the Supreme Court's decision that amendments would not be futile, at least that the district court was applying the wrong standard to that. Or do you disagree? I think that the, look, in terms of the futility point, that's a hard point to defend. With regard to the procedural posture of the case, what they do in their cert petition, after this court affirms the district court on that point in the cert petition, they do not challenge that ruling. So, you're talking about counts 1, 2, and 4 there? I'm talking, sorry, Your Honor, I'm talking about the second amended complaint. Okay. They affirm this court's affirmance. Sorry, sorry. This court affirmed the district court's denial of leave to file a second amended complaint. On appeal, the appellants do not challenge that ruling in the Supreme Court. And that's strategic, we think, because of their cert petition. Then the Supreme Court drops a footnote. It's a star. It's in their opinion. That says, essentially, we have no view on this. The court, this comes back to this court with the exact language that is, you know, apply Twombly, Iqbal, do it in light of Dudenhofer. And the Supreme Court, if they were going to, wanted this court to reconsider that, they knew how to do it. So, for example, in the Iqbal case, in the Walker process case, both of which are cited in our briefs, the Supreme Court actually directs the Second Circuit in one of those cases, I forget the circuit in the other, to go ahead and allow them to replete, to meet the new standard. Here they don't do that. And I think that's because we're dealing with a first amended complaint. But nonetheless, they don't do it. So I think futility is one issue, but I think, you know, there's enormous, it was denied because it was too late. It was prejudicial to Northwestern. And so I don't think it should be revisited by this court. Thank you. May I say one thing about the record-keeping claims? Quickly. Your time has expired, but we had a lot of questions for you.  We think Oshkosh, Deere, and Loomis take care of those claims. Kraft we read as competing experts with regard to that particular issue. That was a summary judgment case? Yes, exactly. Thank you. Thank you. Mr. Sawyers. Thank you. To Mr. Martin's point that the reply brief admitted that the plant could only use TIA as record-keeper and would have incurred a 2.5% penalty, I don't believe that's a fair reading of what was argued there. I think we can, except for the sake of argument, if that were true, that still wouldn't eliminate the claim because it doesn't hinge on either of those things. That still wouldn't have prevented reducing fees in other ways. I wanted to point out another distinction from Albert. It's not necessary to say that it was wrongly decided. Although not addressing George is an issue, and George was a summary judgment case, but the legal duty doesn't change based on the procedural posture. But the distinction in Albert is it didn't involve a failure to monitor investments. We cited this in our 28-J letter. Here, the retail shares and the failure to monitor them directly contribute to the excessive record-keeping and revenue sharing. Judge Hamilton, your point about personal liability of the fiduciaries, that is what Congress provided for in the statute, but there are often stipulations to dismiss as individual defendants in front of the corporate defendant. Is that a matter of grace on the part of the plaintiffs? The plaintiffs agree to it readily. It simplifies the case. If you're merciful. Well, there's no reason not to be. The point about the fiduciaries being concerned with disruption, that's a possibility, but it would be speculative in this case to say it. And just the last point being there is certainly uncertainty in this area on the pleading standard, and it's unusual to have discovery corroborating what's alleged in the complaint, which we have here. And we didn't raise the failure to amend in the Supreme Court petition because there's no circuit split on the issue. It wouldn't have been appropriate to include in the petition, but we consistently argued in the briefs that the evidence developed in discovery further supported the claims. So if there were any deficiencies found, the uncertainty in the pleading standard that continues today I think would warrant an opportunity to file an amended complaint. That's all I have. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.